IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SHAWN HAYNES, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:17-cv-01267 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| CITY OF CLARKSVILLE and MAYOR KIM MCMILLAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. No. 24), to which no response has been timely filed, despite extensions of time granted to Plaintiff Haynes' counsel. *See* Doc. Nos. 32, 36 and 39. No timely response having been filed, the Motion for Summary Judgment shall be deemed to be unopposed. Local Rule 7.01(a)(3). Plaintiff has also failed to file a timely response to Defendant's Statement of Undisputed Facts, as required by Local Rule 56.01(b). Therefore, the asserted facts shall be deemed undisputed for purposes of summary judgment. Local Rule 56.01(f).

The Court may not grant Defendants' Motion solely because Plaintiff failed to respond, however. *LeMaster v. Alternative Healthcare Solutions, Inc.*, 726 F. Supp. 2d 854, 860 (M.D. Tenn. 2010) (citing *Stough v. Mayville Cmty. Schools*, 138 F.3d 612, 614 (6th Cir. 1998)). The Court, at a minimum, is required to examine Defendants' Motion for Summary Judgment to ensure that they have discharged their initial burden. *Id*.

**FACTS**

The facts, unless otherwise noted, are taken from Defendants' Statement of Undisputed Facts (Doc. No. 26), which are deemed undisputed for purposes of this Motion. Plaintiff is an

African-American male veteran and suffers from post-traumatic stress disorder ("PTSD"). He was hired by the City of Clarksville as a water distribution and wastewater collection assistant on February 4, 2016. The City of Clarksville hired Plaintiff as a probationary employee, in accordance with the probationary employee policy stated in the City of Clarksville Employee Handbook. Plaintiff claims that the managers who hired him knew that he was African-American, was a veteran, and had PTSD.

Under the City's probationary employee policy, each new employee (except firefighters and police officers) is required to serve a probationary period of at least 12 months. Doc. No. 24-4 at 21. The policy expressly states that "at any time during the probationary period, the department head may terminate the employment of any probationary employee within their department, with or without just cause, and said probationary employee shall not be entitled to the due process procedures afforded non-probationary employees." *Id*. The probationary period gives the supervisor or department head an opportunity to observe the employee on the job, so a determination may be made as to whether the employee is capable and willing to perform the required duties in a satisfactory manner. *Id*.

As part of his job duties, Plaintiff had to be lowered down into the sewer on a hoist (or harness) and detach himself from the hoist to service the needed area. Plaintiff was unable to detach himself from the hoist because of a pre-existing shoulder injury. Plaintiff's inability to detach himself from the hoist was a big safety issue for the City because the job of performing maintenance in confined spaces required two employees, and if something happened to the other employee, Plaintiff could not detach himself from the hoist to help that employee.

Plaintiff complained to management about certain "pranks" of the other employees on his team that he did not like. Once he complained, the pranks stopped. Plaintiff also complained about

loud noises on the job that triggered his PTSD. He asked for some kind of warning, if possible, before such noises occurred. Plaintiff's supervisor offered him earplugs and earmuffs to help with the noise, and sometimes Plaintiff wore the ear protection. On March 29, 2016, the City fired Plaintiff, who was still a probationary employee, for lack of initiative, failure to catch on to simple tasks, failure to follow instructions, and being on his cell phone instead of doing the job he was being paid to do. Plaintiff's supervisor observed all these things while he and Plaintiff were on the job.

During his employment, Plaintiff never complained that the pranks being played were played because he was black, because he was a veteran, or because he has PSTD. No one employed by the City made any derogatory remarks to Plaintiff about his race, his veteran status, or his PTSD. In a letter written to the City's Human Resources Manager after his termination, Plaintiff stated that he believed the underlying basis of his termination was his refusal to participate in the team's pranks. He did not state that he believed he was fired because of his race, veteran status, or PTSD.

Plaintiff now alleges (in the Amended Complaint) that Defendants discriminated and retaliated against him based on his race, in violation of 42 U.S. C. § 2000e, *et seq.* ("Title VII"); discriminated and retaliated against him because of his PTSD, in violation of 42 U.S.C. § 12101, *et seq.* ("ADA");[1] and violated 38 U.S.C. § 4301, *et seq.* ("USERRA").[2]

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms,

[1] Americans with Disabilities Act

[2] Uniformed Services Employment and Reemployment Rights Act of 1994.

this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). On a motion for summary judgment, a party may object that the supporting materials\ specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or

explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 2017 WL 57792 at ** 5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

**TITLE VII AND ADA DISCRIMINATION**

A plaintiff may use either direct or circumstantial evidence to bring a discrimination claim. Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Rock v. T.N.H.D. Partners, LLC*, 833 F. Supp. 2d 802, 815 (M.D. Tenn. 2011). If the plaintiff has credible direct evidence of discrimination, the burden of persuasion shifts to the defendant to show that it would have terminated the employee even if it had not been motivated by impermissible discrimination. *Id.; see also McGee v. Food Warming Equipment*, No. 3-14-cv-01776, 2017 WL 587856 at * 2 (M.D. Tenn. Feb. 16, 2017). Plaintiff has presented no direct evidence of discrimination.

If the plaintiff relies on circumstantial evidence, he or she must establish a *prima facie* case. [3] Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If it does so, the burden returns to the plaintiff to show that the defendant's reason was a pretext for discrimination. *Sybrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557-58 (6th Cir. 2009); *Monce v. Marshall Cty. Bd. of Educ.*, 307 F. Supp. 3d 805, 814 (M.D. Tenn. 2018). To show pretext, Plaintiff may show that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the action, or (3) the proffered reason was insufficient to warrant the adverse action. *Sybrandt*, 560 F.3d at 558. Throughout this burden-shifting approach, the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate. *Monce*, 307 F. Supp. 3d at 814.

For purposes of this motion, the Court will assume that Plaintiff could establish a *prima facie* case. The Court then looks to whether Defendants have offered a legitimate, nondiscriminatory reason for their decision to fire him. The Court finds that Defendants have articulated multiple such reasons: lack of effort and initiative; failure to catch on to simple tasks, such as use of a chop saw; failure to follow instructions and do tasks required of him; and being on his cell phone instead of doing the job he was being paid to do.

---

[3] To establish a *prima facie* case of Title VII discrimination, Plaintiff must show that: (1) he is a member of a protected group; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) similarly-situated, non-protected employees were treated more favorably. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).

To establish a *prima facie* case of disability discrimination, Plaintiff must show that: (1) he is an individual with a disability; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment action because of his disability. *Monce*, 307 F. Supp. 3d at 814.
.

Defendants have also produced evidence that Plaintiff was unable to meet an important safety requirement of his job: being able to detach himself from his harness when he was lowered into the sewer. Defendants' legitimate, nondiscriminatory reasons are sufficient to motivate and warrant the termination decision, especially since Plaintiff was a probationary employee. Employees on probation were more likely to be closely watched, and supervisors more likely to fire probationary employees for legitimate reasons. The policy states that the probationary period "is intended to give you and the City an opportunity to see how well we are getting along." Doc. No. 26 at 4. The probationary period gives the supervisor an opportunity to observe the employee on the job so that a determination may be made as to whether the employee is capable and willing to perform the required duties in a satisfactory manner. *Id*. at 5.

Plaintiff has presented no evidence (and not shown in any way), especially given that Plaintiff's termination occurred while Plaintiff was a probationary employee, that Defendants' reasons were pretextual. As noted, under the City's policy, at any time during the probationary period, a department head may terminate the employment of any probationary employee within his department, *with or without just cause*, and said probationary employee shall not be entitled to the due process procedures afforded non-probationary employees.

Moreover, where, as here, the same person or persons hire the employee and fire him within a short period of time, especially where the employee's class or status has not changed, there is a strong inference of no discriminatory intent. *Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791, 801 (6th Cir. 2007); *Hugo v. Millennium Laboratories, Inc.*, 993 F. Supp. 2d 812, 829 (E.D. Tenn. 2014).

In addition, Plaintiff has not offered evidence on the ultimate issues—whether Plaintiff's firing was based upon race or disability. Instead, the Court discerns only an absence of evidence

indicating that Plaintiff's firing was on this basis. For example, in his deposition, Plaintiff agreed that he never complained to Defendants that he was being pranked because he was black, disabled, a veteran or had PTSD. Doc. No. 24-1 at 94-95 (Dep. at 197-98). Because Plaintiff did not feel the need to report this allegedly illegal misconduct to Defendants, Defendants had no opportunity to address—and thus did not fail to address—Plaintiff's allegations while he was still an employee. This fact, though not dispositive by itself, is indicative of the kinds of circumstances that could indicate discriminatory intent but are simply lacking based on the record in this case

Plaintiff further agreed that no one on his crew ever made any racially derogatory remarks to him. *Id*. at 60 (Dep. at 137). Likewise, he testified that no one made derogatory remarks about his veteran status or his PTSD. *Id*. at 61 (Dep. at 141). Plaintiff maintained that he was fired for refusing to participate in the team's pranks, *id*. at 78 (Dep. at 158), a stance which implicates neither a protected status or protected activity under Title VII or the ADA. He agreed that there was nothing in his post-termination letter to Human Resources that indicated he believed he was terminated because of his race, veteran status or PTSD. *Id*. at 79 (Dep. at 161). Plaintiff has not shown anything that points to a discriminatory motive.

In short, Defendants have carried their burden, and Plaintiff has failed to demonstrate a genuine issue of material fact as to whether he was discriminated against based upon race or disability. Defendants' Motion for Summary Judgment on his discrimination claims will be granted, and those claims will be dismissed.

**TITLE VII AND ADA RETALIATION**

To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) the activity was known to the defendants; (3) he was subjected to a materially

adverse employment action, and (4) there was a causal connection between the protected activity and the adverse action. *Fox v. Yates Servs., LLC*, 232 F. Supp. 3d 971, 981 (M.D. Tenn. 2017).

Because Plaintiff did not complain about (or file claims concerning) racial or disability discrimination prior to his termination, Defendants have carried their burden to show that Plaintiff did not engage in protected activity under Title VII. Plaintiff has come forward with nothing to demonstrate a genuine issue of material fact with regard to protected activity. Moreover, as explained above, Defendants have offered a legitimate, nondiscriminatory reason as the cause for Plaintiff's termination, and Plaintiff has not shown there to be a causal connection between the firing and any protected activity.

Therefore, Defendants have carried their burden to demonstrate that Plaintiff cannot establish a *prima facie* case of retaliation, and Plaintiff has not shown there to be a genuine issue of material fact on this issue. Defendants' Motion for Summary Judgment will be granted as to retaliation, and those claims will be dismissed.

## ADA FAILURE TO ACCOMMODATE

To establish a *prima facie* case for failure to accommodate under the ADA, Plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he was otherwise qualified for the position; (3) Defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) Defendants failed to provide the necessary accommodation. *Hale v. Johnson*, 245 F. Supp. 3d 979, 988 (E.D. Tenn. 2017). The Amended Complaint alleges that Plaintiff's disability is PTSD and that he requested accommodation based on his sensitivity to noise, but Defendants failed to provide reasonable accommodation.

Plaintiff testified that on one particular job site, one of the crew members started operating a jackhammer to break up concrete, and the noise "just took him back." Doc. No. 24-1 at 27 (Dep.

at 88). He stated that he told them if they were going to something like that, to let him know ahead of time before they just did it, if they could—"some kind of warning or heads-up." *Id*. and p. 96 (Dep. at 199). Plaintiff admitted that Defendants suggested he could wear earplugs or earmuffs, part of the safety equipment provided, to help with the noise and that he used them sometimes. *Id*. at 56 (Dep. at 130).[4] Plaintiff agreed that his job description included the physical requirement of being subjected to "intense noises." *Id.* at 23-24 (Dep. at 79-80); *see also* Doc. No. 24-1 at 141.

The Court assumes, for purposes of this motion, that PTSD is a disability, that Defendants knew about Plaintiff's disability, and that Plaintiff requested an accommodation (*i.e.*, for the other crew members to warn him before they caused a loud noise). Defendants provided a *different* accommodation, earplugs and earmuffs. The Court need not decide whether that accommodation dooms the fifth element of Plaintiff's *prima facie* case, because the second element has not been satisfied.

The second element of a failure to accommodate claim requires that the Plaintiff be "otherwise qualified for the position," and a person is deemed "qualified" only if he can perform all the essential functions of the job, whether reasonably accommodated or not. 42 U.S.C. §12111(8); *Williams v. AT&T Mobility Servs.*, 847 F.3d 384, 391 (6th Cir. 2017). Plaintiff has not shown that he was otherwise qualified for the position. As explained above, Plaintiff was unqualified because he was unable to detach from the harness when lowered into a sewer. There is no evidence that Plaintiff requested an accommodation for this inability. Plaintiff also was unqualified for the job for the very reasons he was terminated: he was not putting forth the effort and initiative Defendants liked to see out of new (and probationary) hires; he had trouble operating

[4] Plaintiff also testified that because he needed to hear different commands, he did not always use the earplugs or earmuffs. Doc. No. 25-1 at 56 (Dep. at 130).

a chop saw; he talked on his cell phone on the job site; and he repeatedly failed to do one of the tasks required of him (filling coolers with fresh water).

Therefore, Defendants have carried their burden of demonstrating that Plaintiff was not "otherwise qualified" for this position. Plaintiff has not established a genuine issue of material fact as to his *prima facie* claim for failure to accommodate. Defendants' Motion for Summary Judgment on this claim will be granted, and the claim will be dismissed.

**USERRA**

Finally, Plaintiff asserts a claim for violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (38 U.S.C. § 4301, *et seq.)* The Amended Complaint states that Plaintiff is entitled to benefits under USERRA because of his prior military service and that Defendants denied him those benefits

USERRA was enacted to prohibit discrimination against individuals because of their military service. *Bobo v. United Parcel Serv.*, 665 F.3d 741, 754 (6th Cir. 2012). USERRA prohibits an employer from denying initial employment, reemployment, retention in employment, promotion, or any benefit of employment on the basis of the employee's military status. 38 U.S.C. § 4311(a); *Savage v. Federal Express Corp.*, 856 F.3d 449, 446-47 (6th Cir. 2017). Similarly, USSERA prohibits an employer from retaliating against an employee for exercising his rights under the statute. *Id*. at 447. An employee has the initial burden of proving a *prima facie* case by showing that his protected status was a substantial or motivating factor in the adverse employment action. *Id*. Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration. *Hickle v. American Multi-Cinema, Inc.*, 296 F. Supp. 3d 879, 885 (S.D. Ohio 2017).

If the employee establishes his *prima facie* case, the employer has the opportunity to prove affirmatively that it would have taken the same adverse action in the absence of the employee's protected status. *Bobo*, 665 F.3d at 754. Plaintiff served in the military 11 years before Defendants terminated his employment. Doc. No. 24-1 at 4 (Dep. at 22). As noted above, Plaintiff testified that no one employed by the City made any derogatory remarks to him about his veteran status or military service. He affirmed that he was always allowed to go to his VA appointments and that was never an issue. *Id*. at 55 (Dep. at 129). And the same persons who hired Plaintiff, knowing that he was a veteran and had PTSD, are the persons who made the decision to end his employment. Plaintiff has not shown that his military status was a factor at all, much less a substantial or motivating factor, for his termination.

For the same reasons as with his Title VII and ADA claims, Defendants have carried their burden of showing that Plaintiff's military status was not a motivating factor in the firing decision. Plaintiff has not demonstrated a genuine issue of material fact as to Defendants' explanation that it would have fired him for other, valid reasons, regardless of his military status. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's USERRA claim will be granted, and that claim will also be dismissed.

**CONCLUSION**

For all these reasons, Defendants' Motion for Summary Judgment (Doc. No. 24) will be **GRANTED**, and this action will be **DISMISSED**.[5] An appropriate Order will be entered.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

[5] Because Plaintiff's claims have all been dismissed as to both Defendants, the Court need not address the argument of Defendant McMillan concerning whether she should be a Defendant.